# STATE OF MICHIGAN

# COURT OF APPEALS

DORIS HOPE-JACKSON, ED. D.,

        Claimant-Appellee/Cross-
Appellant,

v

SHERI WASHINGTON,

        Respondent-Appellant/Cross-
Appellee,

and

WILLOW RUN COMMUNITY SCHOOLS,

        Respondent.

FOR PUBLICATION
August 18, 2015
9:15 a.m.

No. 319810
Washtenaw Circuit Court
LC No. 12-001139-CZ

Before: WILDER, P.J., AND SERVITTO AND STEPHENS, JJ.

WILDER, P.J.

Respondent, Sheri Washington, appeals as of right the circuit court's order granting claimant, Doris Hope-Jackson's motion to confirm an arbitration award (post-remand order) regarding claimant's defamation claim and denying respondent's motion to vacate that award. Respondent also challenges an earlier order by the circuit court vacating a portion of one of the arbitrator's previous orders (pre-remand order) that both dismissed claimant's defamation claim because the limitations period had expired and remanded for further proceedings. We affirm, in part, but vacate the portion of the arbitrator's post-remand order awarding $140,000 in exemplary damages to claimant.

I

The instant matter arises out of a multi-count complaint by claimant, the former Superintendent of Willow Run Community Schools (Willow Run), against Willow Run and respondent, who was a school board member during claimant's tenure. Claimant made numerous allegations in lower court docket number 10-680-DC, including breach of contract, sexual harassment, and violations of the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, due process, the Bullard–Plawecki Employee Right to Know Act, MCL 423.501 *et seq.*, the Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*, and the Elliot-Larsen Civil

-1-

Rights Act, MCL 37.2101 *et seq.*, which were submitted to arbitration and ultimately dismissed. Relevant to this appeal is claimant's defamation claim against respondent arising from posts made to a website, willowrunwatchdogs.com.

Initially, in the pre-remand order, the arbitrator dismissed the defamation claims, ruling they were time-barred. The arbitrator found that the challenged posts on the website were made from June 18, 2008 to June 15, 2009. Moreover, the arbitrator found that, because the complaint was filed on June 22, 2010, these allegedly defamatory statements made before the one-year period of limitations (June 22, 2009 to June 22, 2010) were time-barred.

After dismissing the defamation claim, however, the arbitrator ordered supplemental briefing on the question whether the statute of limitations was tolled under MCL 600.5855 if respondent was the administrator of the website and she concealed her involvement with it. The record demonstrated that, at Willow Run's 2010 pre-termination hearing for claimant, a witness (Jennifer Thornsberry) testified that she believed respondent was the administrator, but respondent nevertheless testified that she was not. Ultimately, the arbitrator took judicial notice that respondent was the website's administrator and found that respondent had actively concealed her administrative role. Regardless of respondent's concealment of her identity, however, the arbitrator again concluded that the statute of limitations was not tolled, reasoning that the period of limitations continued to run because claimant was aware she had a possible cause of action for defamation at the time the posts were made.

The arbitrator also held respondent in contempt of court for repeatedly making false statements about her role as the website's administrator. Respondent paid $12,500 in sanctions to claimant and the parties agreed that the payment satisfied the portion of the arbitration order for sanctions.

Claimant filed a complaint in the circuit court (lower court docket number 12-1139-CZ) to vacate the arbitrator's pre-remand order dismissing her claims. The circuit court ruled that dismissing the defamation claim regarding the posts on the website was a clear error of law given the arbitrator's findings about respondent's concealment of her role as administrator. The circuit court remanded the matter to the arbitrator for consideration of that claim alone.

On remand, the arbitrator issued an interim remand opinion and order, finding that the administrator made at least two per se defamatory statements and that they were made with actual malice. The arbitrator further found that some of the statements made by a blogger identified as WRCAT were also defamatory and that a question of fact existed regarding whether WRCAT was also respondent. On this question of fact concerning the identity of WRCAT, the arbitrator permitted the parties to offer additional evidence. Next, the arbitrator requested briefing and oral argument regarding whether statements against professional reputation can be defamation per se or whether defamation per se is limited to criminal conduct and lack of chastity. Finally, the arbitrator ordered oral argument on damages, particularly whether exemplary or punitive damages were permitted and whether a request for a retraction was made by claimant.

In a post-remand order, the arbitrator found claimant's testimony to be "generally credible" and respondent's testimony to be "self-serving, evasive when convenient, and clear and

decisive when it served her purposes." The arbitrator also found that posts on the website that were identified as having been made by the administrator, "admin," and "WRCAT" were actually made by respondent. The arbitrator found, consistent with the pre-remand order that claimant's termination was not a violation of her contract, that the defamation did not contribute to the termination. The arbitrator ruled that while defamation per se does not generally extend to business interests, some of respondent's statements constituted allegations of a crime and therefore were defamation per se. In a review of each statement made on the website pertaining to claimant the arbitrator concluded that:

> Defamation per se can be found on page [sic] 3 and 7-8 in an article entitled "Google Me." The allegations on these pages are particularly concerning for the Arbitrator. Statements that Dr. Jackson "has abused her authority as superintendent; disrespected parents to the highest degree; violated contracts and state and federal laws; [and] threatened employees" will be considered defamatory. More particularly, the statements that Claimant violated state and federal laws are made with actual malice and sufficient in the Arbitrator's mind, especially when viewing the website as a whole, to qualify as accusations of a crime and, accordingly, defamation per se. Similar statements can be found on page 37 in an article entitled "Have white employees been victims of reverse discrimination in WR?

Regarding the statements that 1) claimant " 'robs Willow Run blind' by 'boosting [Larry and Laconda's] big salaries', and 2) that Claimant is 'giving away [Willow Run's] $$$ [sic]" by "[finding] a way to get Laconda a raise' " the arbitrator, citing *Hodgins v Times Herald Co*, 169 Mich App 245, 253; 425 NW2d 522 (1988), found that these statements were not accusations of a crime, but instead were strongly worded opinions and political speech. The arbitrator concluded that the remaining passages cited by claimant were not defamation, either because: (1) respondent did not make the statements, (2) the statements were not about claimant, (3) the statements were hyperbole, strongly worded opinion, or political speech, or (4) the statements did not contain actual malice.

The arbitrator awarded $360,000 in per se damages, and $140,000 in exemplary damages. Respondent had testified at the pre-termination hearing:

> I recall having a meeting with Dr. Jackson it may – maybe August, Septemberish, I'm not sure of the exact date but I think that period of time is close. Dr. Jackson had a prepared agenda for this particular meeting, a rather long agenda. And towards the bottom of that agenda there was the name "watchdogs" and . . . she said that there were some employees that were having difficulty with finding new employment because of what was posted on that web site and . . . they're going to sue . . . . And she had asked me if I could talk to whoever is responsible for the site and ask them to remove, I guess, information pertaining to -- and at that point in the conversation, she hadn't mentioned names, but I think she mentioned -- she made reference later in the conversation, like, she didn't want to reveal it at the beginning, and basically she was like, "What should I tell them?" And I --you know, I'm not a lawyer. I can't give legal advice. But I think I said something to

-3-

her along the lines that referenced, "Listen to your attorney" as far as what to tell the individuals that she was counseling with.

Concerning exemplary damages, the arbitrator found that the testimony showed that, although claimant asked to have the website removed, she did not request a retraction. The arbitrator recognized that, generally, a party must seek a retraction in order to recover exemplary damages, citing *Cousino v Nowicki*, unpublished opinion per curiam of the Court of Appeals, issued March 30, 2004 (Docket No. 240764), but nevertheless concluded that exemplary damages should be awarded to claimant because any request for a retraction from respondent would have "fallen on deaf ears." The arbitrator declined to award attorney fees.

In the circuit court, claimant moved to confirm the award and respondent moved to vacate it. The circuit court granted claimant's motion, denied respondent's motion, and entered a judgment for claimant totaling $505,754.50

II

A

Respondent, asserting that the arbitrator correctly ruled that claimant's defamation claim was time-barred and that tolling under MCL 600.5855 did not apply, contends that the circuit court therefore exceeded its limited authority by vacating the portion of the arbitrator's pre-remand order dismissing the defamation claim on statute of limitations grounds. We disagree.

This Court reviews de novo a circuit court's decision to vacate an arbitration award. *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004). The circuit court's power to vacate a statutory arbitration award is very limited. *Gordon Sel–Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991).

> Reviewing courts can only act upon a written record. There is no requirement that a verbatim record be made of private arbitration proceedings, there are no formal requirements of procedure and practice beyond those assuring impartiality, and no findings of fact or conclusions of law are required. Thus, from the perspective of the record alone, a reviewing court's ability to review an award is restricted to cases in which an error of law appears from the face of the award, or the terms of the contract of submission, or such documentation as the parties agree will constitute the record. [*DAIIE v Gavin*, 416 Mich 407, 429; 331 NW2d 418 (1982).]

The *DAIIE* court further explained:

> "In many cases the arbitrator's alleged error will be as equally attributable to alleged 'unwarranted' factfinding as to asserted 'error of law'. In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable." [*Id.* at 429.]

-4-

To merit vacation of an arbitration award, an error of law must be evident on the face of the award and

> be so egregious, . . . so materially affect the outcome of the arbitration, . . . so plainly demonstrate a disregard of principles fundamental to a fair resolution of the dispute, or . . . so unequivocally generate a legally unsustainable result, that [the erroneous legal conclusions] cannot be said to be within the parties' agreement to arbitrate or the arbitrator's authority. [*Id.* at 430.]

"By 'on its face' we mean that only a legal error that is evident without scrutiny of intermediate mental indicia will suffice to overturn an arbitration award" as we may not "engage in a review of an arbitrator's mental path leading to the award." *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (quotation marks and citations omitted).

The period of limitations for claimant's defamation claim is one year. See MCL 600.5805(9). Claimant's complaint was filed on June 22, 2010. The arbitrator explained that there was no defamation claim in the initial complaint but respondents "assume that [claimant's] defamation claim would relate back to the June 22, 2010 filing under MCR 2.118(D)." Thus, the defamation claim based on statements, which the arbitrator found all preceded June 22, 2009, would be time-barred by MCL 600.5805(9) unless the limitations period was tolled.

MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

The arbitrator found that respondent fraudulently concealed her identity as the administrator of the website and author of the challenged posts. On appeal, respondent merely maintains that the fraudulent concealment of her identity did not trigger tolling under MCL 600.5855 because claimant was nevertheless aware of the cause of action for defamation at the time the posts were made and before the limitations period expired.

In *Int'l Union United Auto Workers of America v Wood*, 337 Mich 8, 59 NW2d 60 (1953), the Michigan Supreme Court held that the concealment of a defendant's identity, as opposed to the concealment of a cause of action, did not trigger the fraudulent concealment statute. At that time, the fraudulent concealment statute was worded differently:

> If any person who is liable to any of the actions mentioned in this chapter, 62 shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter. [1948 CL 609.20.]

In 1954, the statute was amended:

> If any person, who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action, or *conceal the identity of any party thereto*, from the knowledge of the person entitled thereto, the action may be commenced at any time wihin [sic] 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter. [*Vega v Briggs Mfg Co*, 341 Mich 218, 222; 67 NW2d 81 (1954), quoting 1954 PA 49 (emphasis added).]

In *Ross v Fisher*, 352 Mich 555; 90 NW2d 483 (1958), the plaintiff was beaten by two police officers. The trial court dismissed the plaintiff's claim against the officers because it was not filed within the two-year period of limitations. On appeal, the Supreme Court explained that the plaintiff knew he had a cause of action at the time he was beaten up, but the plaintiff maintained that, due to fraudulent concealment, he was unable to learn the identity of the officers until after the limitations period expired. The Court acknowledged that the 1954 amendment to the fraudulent concealment statute included language regarding concealment of a party's identity, but held that it did not result in tolling for the concealment of the identity of a party because, under the plain language of the amendment, tolling was limited to the discovery of a "cause of action." The Court explained, "The situation before us then is not so much an ambiguity in the words used in the amendment as the complete omission of an essential 'pay off' clause from an essential place in the amended statute." *Id.* at 559. Because the amendment did not toll the limitations period on the basis of the discovery of the identity of a party, the Supreme Court affirmed the dismissal of the plaintiff's claim against the officers.

Thereafter, in 1963, the statute was amended to its current form, including "the identity of the person" in the "pay off clause" described by the Court in *Ross*:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim *or the identity of the person* who is liable for the claim, although the action would otherwise be barred by the period of limitations. [MCL 600.5855 (emphasis added.)]

Unlike the versions of the statute in *Wood* and *Ross*, which only allowed for tolling on the basis of the discovery of a cause of action, the plain language of the fraudulent concealment statute now allows for tolling if *either* the claim or the identity of the person who is liable for the claim is fraudulently concealed. Therefore, we conclude that the arbitrator erred as a matter of law when it ruled that tolling under MCL 600.5855 did not apply because claimant was aware of the cause of action for defamation at the time posts were made on the website even if she did not

know the identity of the author of the posts. Accordingly, the circuit court did not exceed its limited authority by vacating that portion of the arbitrator's pre-remand order. *Gordon Sel–Way*, 438 Mich at 495.[1]

We also reject respondent's related argument that, to be entitled to tolling, claimant was required to file her defamation claim against an alternative party, such as John Doe or willowrunwatchdogs.com. The plain language of MCL 600.5855 allows an action to be "commenced . . . within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim." Nothing in the statute requires a plaintiff to commence an action within the statute of limitations period with a placeholder defendant and then amend the complaint when the identity of the proper defendant is discovered, as respondent suggests. The absence of such a requirement is deemed to be intentional. This Court may not read language into a statute. See *Mich Ed Ass'n v Sec of State* (*On Rehearing*), 489 Mich 194, 218; 801 NW2d 35 (2011).

Respondent further argues that claimant's acceptance of the $12,500 in sanctions amounted to a waiver by claimant of tolling through fraudulent concealment. Respondent cites the document signed by both parties, which is labeled "Satisfaction of Sanctions Award Portion of Arbitration Award," and provides:

> Claimant, Doris Hope-Jackson, through her attorneys, Darryl K. Segars and Herbert A. Sanders, hereby acknowledges that the $12,500 Sanctions Award in favor of Claimant against Respondent Washington, as delineated in the Arbitration Award entered in the above-captioned matter on October 1, 2012, has been satisfied in full and that this portion of the October 1, 2012, Arbitration Award is not the subject of Claimant's Motion to Reinstate Case and Vacate and/or Modify Arbitration Award filed with the Washtenaw County Circuit Court, Case No. 10-680-CD. Claimant further agrees that the sanctions portion of that October 1, 2012, Arbitration Award shall not be challenged by Claimant and that Claimant shall not attempt to reinstate, vacate, and/or modify the award or appeal that portion of the October 1, 2012 Arbitration Award in this action or any other action.

"A 'waiver is the intentional relinquishment or abandonment of a known right.' " *Acorn Inv Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 357; 852 NW2d 22 (2014), quoting *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). In the "Satisfaction of Sanctions" document, claimant merely relinquished any challenge to the "$12,500 Sanctions Award." Although the basis of the sanctions award was respondent's repeated false statements, and claimant maintained that respondent's false statements impeded discovery of respondent's

---

[1] Respondent's reliance on *Doe v Roman Catholic Arch Bishop of the Arch Diocese of Detroit*, 264 Mich App 632, 643; 692 NW2d 398 (2004) is misplaced because, in that case, the plaintiff only claimed the cause of action had been concealed and made no claim that the defendant Arch Diocese's identity, like respondent's identity here, had been concealed.

identity for purposes of filing the defamation claim within the limitations period and for purposes of MCL 600.5855, nothing in the "Satisfaction of Sanctions" document relinquishes a right to challenge the arbitrator's dismissal of the defamation claim on statute-of-limitations grounds. Therefore, respondent's payment of the sanctions and claimant's signature on the "Satisfaction of Sanctions" document did not amount to a waiver of the challenge to the dismissal of the defamation claim.

B

Respondent also argues on appeal that the circuit court should have vacated the arbitrator's post-remand order making several factual findings and damages awards. We disagree, in part, and agree, in part.

1

Respondent claims that the circuit court should have vacated the arbitrator's post-remand order because (a) her statements were not defamatory allegations of a crime, but rather were just hyperbole, and (b) the arbitrator found that she acted with actual malice but did not expressly address, in its opinion, that she knowingly made a false statement or made a false statement in reckless disregard of the truth. We disagree.

In Michigan, the four basic elements of a defamation claim are as follows:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Ghanam v Does*, 303 Mich App 522, 544; 845 NW2d 128 (2014).]

"A communication is defamatory if, considering all the circumstances, it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ireland v Edwards*, 230 Mich App 607, 619; 584 NW2d 632 (1998). Under MCL 600.2911(1), statements imputing a lack of chastity or the commission of a crime constitute defamation per se and are actionable even in the absence of an ability to prove actual or special damages. *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000).

Moreover, "a plaintiff who is a public official may only prevail in a defamation action if he or she establishes that the alleged defamatory statements were made with 'actual malice.' 'Actual malice' exists when the defendant knowingly makes a false statement or makes a false statement in reckless disregard of the truth." *Smith v Anonymous Joint Enter*, 487 Mich 102, 114; 793 NW2d 533 (2010); MCL 600.2911(6).

> Without the actual malice requirement, "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so." Whether the statements are defamatory and whether the evidence presented is sufficient to show actual

malice on the part of the defendant present questions of law to be decided by the courts. When a plaintiff who is a public official cannot show actual malice by clear and convincing evidence, the defendant is entitled to summary disposition of the defamation claim. [*Ghanam*, 303 Mich App at 531-533 (citations omitted).]

The parties do not dispute that claimant was a public official for purposes of the actual-malice requirement.

A court may hold as a matter of law that a defamatory statement is incapable of defamatory meaning. *Ireland*, 230 Mich App at 619. But questions of fact may exist regarding the statement's potential defamatory meaning. *Id*. "[E]xpressions of opinion are protected from defamation actions. However, there is no constitutional protection given to false statements of fact, so false statements of fact are not protected from libel suits." *Hodgins*, 169 Mich App at 253 (internal citation omitted). Courts recognize that "[t]echnical inaccuracies in legal terminology employed by nonlawyers," particularly when "the popular sense of a term may not be technically accurate," should not form the basis for recovery. *Rouch v Enquirer & News of Battle Creek Mich*, 440 Mich 238, 263; 487 NW2d 205 (1992).

We are mindful of the inherent imprecision of language and the difficulties this poses to any evaluation of the truth or falsity of [a statement], particularly one that rests upon the use of a word with ambiguous implications . . . . To ensure the requisite 'breathing space' for free and robust debate on matters of public concern, we think it important to allow for imprecision and ambiguity in the choice of language. [*Id.* at 263 n 25.]

Statements that cannot be interpreted as stating actual facts, such as "rhetorical hyperbole" and "imaginative expression" often found in satires, parodies, and cartoons, are protected by the First Amendment. *Hustler Magazine v Falwell*, 485 US 46, 51; 108 S Ct 876; 99 L Ed 2d 41 (1988); *Ireland*, 230 Mich App at 617. Terms such as "blackmailer," "traitor," "crook," "steal" and "criminal activities" must be read in context to determine whether they are merely exaggerations typically used in public commentary. *Greenbelt Cooperative Publishing Ass'n v Besler*, 398 US 6, 14; 90 S Ct 2d 1537; 26 L Ed 2d 6 (1970); *Kevorkian v AMA*, 237 Mich App 1, 7-8; 602 NW2d 233 (1999).

The context and forum in which statements appear also affect whether a reasonable reader would interpret the statements as asserting provable facts. Courts that have considered the matter have concluded that Internet message boards and similar communication platforms are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact . . . . "Indeed, the very fact that most of the posters remain anonymous, or pseudonymous, is a cue to discount their statements accordingly." [*Ghanam*, 303 Mich App at 546-547, quoting *Summit Bank v Rogers*, 206 Cal App 4th 669, 696-698; 142 Cal Rptr 3d 40 (2012).]

If a reasonable reader would understand such words as merely "rhetorical hyperbole" meant to express strong disapproval rather than an accusation of a crime or actual misconduct, they cannot be regarded as defamatory. *Greenbelt*, 398 US at 14; *Ireland*, 230 Mich App at 618-619.

In *Ghanam*, the plaintiff claimed that statements made on an Internet message board (The Warren Forum) constituted actionable statements of fact that accused him of stealing public property. *Id.* at 525, 550. This Court held:

> Review of these statements in context leads us to conclude that they cannot be regarded as assertions of fact but, instead, are only acerbic critical comments directed at plaintiff based on facts that were already public knowledge, namely the apparent misappropriation of a large amount of rock salt and the controversial purchase of additional garbage trucks. The joking, hostile, and sarcastic manner of the comments, the use of an emoticon showing someone sticking their tongue out, and the far-fetched suggestion that plaintiff somehow hid over 3,600 tons of salt near the city sports complex all indicate that these comments were made facetiously and with the intent to ridicule, criticize, and denigrate plaintiff rather than to assert knowledge of actual facts. Examination of the statements and the circumstances under which they were made show them to be mere expressions of rhetorical hyperbole and not defamatory as a matter of law. [*Id.* at 550.]

In *Hodgins*, the defendant published an editorial letter, which stated that the plaintiffs (kennel owners) would sell dogs to anyone, and then stated that some of the animals were used for dog fighting. 169 Mich App 248-250. Dog fighting and the sale of animals for dog fighting are state and federal crimes. This Court held,

> This is not the same as calling someone a "blackmailer" or a "crook" in a strongly worded opinion statement. The Burgess letter's language accuses or strongly implies that plaintiffs are involved in illegal or wrongful conduct involving dog fighting and moves across the line dividing strongly worded opinion from accusation of crime. These statements are not protected by the First Amendment from libel suits. [*Id.* at 253.]

In this case, in a November 3, 2008 article ("Google Me"), respondent wrote:

> "Thank you, Google, for helping get the word out on how Doris Hope Jackson has abused her authority as superintendent; disrespecting parents to the highest degree; violated contracts and state and federal laws; threatened employees; maintained an environment where staff is punished for speaking to board members or for questioning things; hired unqualified staff and paying them at top of the pay scale; discriminated against white and black employees; reduced services to special needs students; moved teachers into positions so that they could be deemed not highly qualified and have their pay reduced; spawned the highest number of grievances and arbitrations our district has ever seen."

Although the arbitrator found that many of the statements in that article were defamatory, it concluded that only the statement that claimant violated "state and federal laws" amounted to defamation per se.

In an August 28, 2008 article ("Have white employees been victims of reverse discrimination in WR?"), respondent wrote:

There has been alot of talk about Dr. Jackson blatantly abusing her power and administrative authority in the district to "muscle" people out of jobs. Jackson has changed titles, given raises to some. As for others, well, she has demoted, demoralized, threatened and removed them . . . Of these horrific deeds, the most noticeable aspect is that the bad deeds have been done at the expense of white teachers and staff in the district. If Hope Jackson was a white woman, everyone in the district would be screaming bloody murder! But should these bad deeds go unpunished just because she is black? I think not! Jackson so sheepishly does her dirty work in such a way that listening to her paralyzes you, and suddenly fills you with fear . . . for your job.

Jackson needs to be reported to the federal and state authorities. Her behavior and acts are against the law. Someone, everyone needs to blow the whistle on her. Stop fearing retaliation and do something to stop this horrible behavior that the BOE obviously condones.

Jackson seems to have deep rooted issues concerning race relations. Perhaps going to an all-white school in the 60's and 70's left too deep a scar for her to see past her own wrong doings and mistreatments of WR staff.

The arbitrator found that respondent's statement that claimant should be reported to the federal and state authorities because "[h]er behavior and acts are against the law" was defamation per se.

As a verbatim record of the arbitration proceedings is not required, *DAIIE*, 416 Mich at 429, the factual record considered by the arbitrator in this case is incomplete on appeal. As claimant argues, the arbitrator could have established that claimant was a public officer, see MCL 380.471a, and that the allegations that respondent made on the website about claimant's violation of state and federal laws—when considered in light of all of her statements about claimant's "abuse[] of authority" and the context of the website—could have amounted to a charge of misconduct in office, a felony under MCL 750.505. See *People v Perkins*, 468 Mich 448, 456; 662 NW2d 727 (2003) ("An officer could be convicted of misconduct in office (1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance."). Even though the forum used to make the statements was a blog, which tends to be a vehicle for expression of opinions, *Ghanam*, 303 Mich App at 546-547, the arbitrator could have concluded that this website indicated that it was providing more than just opinions—indentifying itself as the Willow Run Community Action Team and taking responsibility for "Keeping Watchful Eyes on Willow Run." The arbitrator could have also concluded that, unlike the posts in *Ghanam*, the statements were not joking or sarcastic; rather, they urged the public to contact the authorities for action. Because the circuit court could not speculate regarding the arbitrator's mental path in concluding that the statements implied that claimant committed a crime and were not hyperbole leading to the award, and the circuit court

could not review the arbitrator's findings of fact, it properly declined to vacate the post-remand order. *DAIIE,* 416 Mich at 429; *Washington*, 283 Mich App at 672.[2]

Respondent further argues that the arbitrator exceeded its authority because it found that she acted with actual malice but did not expressly find, in its opinion, that she knowingly made a false statement or made a false statement in reckless disregard of the truth. The arbitrator was not required to explain its findings of fact regarding actual malice. See *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 555; 682 NW2d 542 (2004) ("no findings of fact or conclusions of law are required"). Respondent cites statements on the website that she claims made her allegations of an abuse of authority substantially true. But the arbitrator could have concluded that, even if claimant abused her authority in the few narrow and specific ways cited by respondent, there was no basis for the remaining sweeping allegations of abuse of authority. Because there is no legal error clearly appearing on the face of the award and we can only speculate as to the reasons for the arbitrator's decision, *Washington*, 283 Mich App 672, the circuit court also did not err by declining to vacate the arbitrator's post-remand order on this ground.

2

Respondent argues that the arbitrator committed clear legal error by awarding exemplary damages on the basis of *Cousino v Nowicki*, unpublished opinion per curiam of the Court of Appeals, issued March 30, 2004 (Docket No. 240764).[3] We agree.

MCL 600.2911(2) provides:

(a) Except as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.

(b) Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages. For libel based on a radio or television broadcast, the retraction shall be made in the same manner and at the same time of the day as the original libel; for libel based on a publication, the retraction shall be published in the same size type, in the same editions and as far as practicable, in substantially the same position as the original libel; and for other libel, the

---

[2] In light of this conclusion, we need not decide whether the arbitrator could have alternatively found defamation per se from the harm to claimant's business reputation.

[3] Unpublished decisions are not binding on this Court. MCR 7.215(C)(1).

retraction shall be published or communicated in substantially the same manner as the original libel.

MCL 600.2911(2)(b) expressly prohibits an award of exemplary damages unless the plaintiff gives notice to the defendant to publish a retraction. Here, the arbitrator found that claimant did not give such notice and, again, this factual finding is not reviewable. *DAIIE,* 416 Mich at 429.

The arbitrator nevertheless awarded exemplary damages by relying on *Cousino.* In that case, the defendant sent a retraction just two days before filing a countercomplaint against the plaintiff. In deciding whether it was error to instruct the jury regarding exemplary damages in light of the short period of time given to publish the retraction, this Court noted that "the trial court instructed the jury that it would award exemplary damages *if* it found that Kiefer requested a retraction and allowed reasonable time for publication of the retraction." This Court further stated that, given the plaintiff's ongoing efforts to malign the defendant, "there is no indication that even with an earlier request for retraction that plaintiff would have retracted his comments."

The arbitrator found that *Cousino* stood for the proposition that a retraction is not required in all circumstances, and concluded that because respondent "maintains little, if any, credibility, combined with the testimony taken during the hearing, there is no doubt in the Arbitrators [sic] mind that such a request would have fallen on deaf ears." On the basis of these legal and factual findings, the arbitrator awarded $140,000 in exemplary damages despite claimant's failure to request a retraction.

The arbitrator's ruling is an error of law on the face of the order. A request for a retraction is mandatory under MCL 600.2911(2). In *Cousino,* the defendant sent a request for a retraction in accord with the statute and there was merely a question of fact whether it was sent within a reasonable time. Here, in contrast, claimant did not satisfy the mandatory statutory retraction requirement. Therefore, the circuit court erred by failing to vacate the award of exemplary damages.[4]

Claimant maintains that the failure to request a retraction is an affirmative defense, which must be raised in the first responsive pleading, and because it was not raised by respondent in her first responsive pleading, it is waived. Claimant cites no authority establishing that the failure to request a retraction is, in fact, an affirmative defense under MCR 2.111(F)(3). Moreover, the lower court record for docket number 10-680-DC is not before this Court and claimant has not attached any exhibits to her brief on appeal, such as the register of actions or any pleadings, to evidence the character and content of defendant's first responsive pleading. Without an adequate record to support claimant's argument, this is yet another factual matter that is unreviewable because of the nature of the arbitration proceeding. *DAIIE,* 416 Mich at 429.

3

---

[4] In light of this conclusion, we decline to address respondent's argument that exemplary damages were improper because she is not a media defendant.

Last, respondent argues that the arbitrator improperly awarded $360,000 in presumed damages because that is not a "nominal amount." But respondent acknowledges *Burden*, in which this Court explained the history of presumed damages:

> Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount. *Slater v Walter*, 148 Mich 650, 652-653; 112 NW 682 (1907); *Scougale v Sweet*, 124 Mich 311, 323, 325; 82 NW 1061 (1900); *Sias v Gen Motors Corp*, 372 Mich 542, 551-552; 127 NW2d 357 (1964). Where the defamatory publication is "maliciously published," the person defamed may recover "substantial damages" even where no special damages could be shown. *Whittemore v Weiss*, 33 Mich 348, 353 (1876). Whether nominal or substantial, where there is defamation per se, the presumption of general damages is well settled. *McCormick v Hawkins*, 169 Mich 641, 650; 135 NW 1066 (1912); *Clair v Battle Creek Journal Co*, 168 Mich 467, 473-474; 134 NW 443 (1912); *Simons v Burnham*, 102 Mich 189, 204; 60 NW 476 (1894); *In re Thompson*, 162 BR 748, 772 (ED Mich 1993). [*Burden*, 240 Mich App at 728.]

Although nominal damages are defined as "a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages," 47 Restatement Torts, 2d, § 907, presumed damages need not just be nominal, but rather "at least a nominal amount." Moreover, under *Burden*, they may be substantial. In this case, the arbitrator relied on the evidence in the record and its judicial experience to conclude that $360,000 in presumed damages were appropriate. Any review of that factual finding is precluded by *DAIIE,* 416 Mich at 429.

4

On cross-appeal, claimant argues that the arbitrator erred by failing to award economic damages (including damages for emotional distress) related to her termination from Willow Run. But the arbitrator relied on its previous finding that Willow Run did not breach its contract with claimant by terminating her[5] and the arbitrator made the factual finding that respondent's posts on the website did not contribute to her termination. Because the arbitrator's findings of fact

---

[5] Claimant suggests the arbitrator was not bound by its previous findings about her breach of contract claim merely because the circuit court subsequently reversed the dismissal of the defamation claim involving posts to the website. But the circuit court affirmed the arbitrator's decision regarding the breach of contract claim. Therefore, the arbitrator was bound by the law of the case. *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120, 134 (2000) ("Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.") (citations and quotations marks omitted).

were unreviewable, the circuit court did not err by affirming the award despite the arbitrator's decision not to award economic damages. *DAIIE*, 416 Mich at 429.

Affirmed. No costs under MCR 7.219 because neither of the parties prevailed in full.


/s/ Kurtis T. Wilder
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens