# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL D. YOUNG, MICHAEL D. YOUNG REVOCABLE TRUST, and WENDY YOUNG,

        Plaintiffs/Counter-Defendants-Appellees,

v

TINA M. BURTON,

        Defendant-Appellant,

and

JUSTIN FARE,

        Defendant,

and

GRANDMA KAY'S FAMILY DINING, LLC,

        Defendant/Counter-Plaintiff-Appellant,

and

HARMON LAW FIRM, PLLC,

        Defendant/Counter-Plaintiff.

UNPUBLISHED
December 19, 2017

No. 334231
Genesee Circuit Court
LC No. 15-105509-CZ

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

       In this dispute over the disbursement of insurance proceeds for a fire loss, defendants Tina Burton and Grandma Kay's Family Dining appeal as of right the circuit court's order granting plaintiffs' motion to confirm an arbitration award, denying defendants' motion to vacate

-1-

the arbitration award, and ordering that the insurance proceeds be distributed by awarding $220,541 to plaintiffs Michael and Wendy Young and awarding $5,611 to Burton. We affirm.

In February 2014, the Michael D. Young Revocable Trust entered into a lease agreement with Burton and defendant Justin Fare; the trust, as landlord, agreed to lease real property in Mt. Morris to Burton and Fare, as tenants, for the purpose of operating a restaurant. The trust later assigned its rights under the lease to Michael and Wendy Young. Burton originally operated the restaurant under the assumed name, Grandma Kay's, but later organized Grandma Kay's as a separate legal entity by forming a limited liability corporation. Burton and Fare obtained a fire insurance policy for the property; it was later changed to list Grandma Kay's as the sole named insured and to list Michael and Wendy Young as loss payees. In February 2015, a fire destroyed the property. The Michigan Insurance Company acknowledged its liability for the loss and issued two checks: one for $220,541, representing the value of the building destroyed by the fire, and another for $5,611, representing the value of personal property destroyed in the fire. Grandma Kay's, as the named insured, refused to consent to the distribution of the proceeds to Michael and Wendy Young, the named loss payees. Plaintiffs filed this action to determine how the proceeds should be distributed. The circuit court submitted the dispute to arbitration.

The arbitrator determined that Michael and Wendy Young were entitled to the $220,541 in proceeds for the loss of the building; the proceeds were to be used to satisfy their obligation to repair the premises. The arbitrator awarded Burton $5,611, representing the value of her personal property destroyed in the fire. The circuit court thereafter granted plaintiffs' motion to confirm the arbitrator's award and denied defendants' motion to vacate the arbitrator's award.

Defendants Burton and Grandma Kay's (hereinafter "defendants") argue on appeal that the circuit court erred in denying their motion to vacate the arbitration agreement. They argue that the arbitrator exceeded his authority by disregarding controlling principles of law when deciding the parties' dispute.

We review de novo a circuit court's decision to uphold or vacate an arbitration award. *Ann Arbor v American Federation of State, Co & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009); *Tokar v Albery*, 258 Mich App 350, 352; 671 NW2d 139 (2003). In *Hope-Jackson v Washington*, 311 Mich App 602, 613-614; 877 NW2d 736 (2015), this Court observed:

> The circuit court's power to vacate a statutory arbitration award is very limited. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991).
>
> > Reviewing courts can only act upon a written record. There is no requirement that a verbatim record be made of private arbitration proceedings, there are no formal requirements of procedure and practice beyond those assuring impartiality, and no findings of fact or conclusions of law are required. Thus, from the perspective of the record alone, a reviewing court's ability to review an award is restricted to cases in which an error of law appears from the face of the award, or the terms of the contract of submission, or such

-2-

documentation as the parties agree will constitute the record. [*DAIIE v Gavin*, 416 Mich 407, 428-429; 331 NW2d 418 (1982).]

The *DAIIE* Court further explained:

In many cases the arbitrator's alleged error will be as equally attributable to alleged "unwarranted" factfinding as to asserted "error of law." In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable. [*Id*. at 429.]

To merit vacation of an arbitration award, an error of law must be evident on the face of the award and

be so egregious, . . . so materially affect the outcome of the arbitration, . . . so plainly demonstrate a disregard of principles fundamental to a fair resolution of the dispute, or . . . so unequivocally generate a legally unsustainable result, that [the erroneous legal conclusion] cannot be said to be within the parties' agreement to arbitrate or the arbitrator's authority. [*Id*. at 429-430.]

"By 'on its face' we mean that only a legal error 'that is evident without scrutiny of intermediate mental indicia' will suffice to overturn an arbitration award" because we may not "engage in a review of an 'arbitrator's "mental path leading to [the] award." ' " *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (quotation marks and citations omitted) (alteration in original).

Thus, courts may not review an arbitrator's factual findings or decision on the merits. *Mich State Employees Ass'n v Dep't of Mental Health*, 178 Mich App 581, 583; 444 NW2d 207 (1989). A court must be careful to limit its review to determining only if the arbitrator exceeded his contractual authority and jurisdiction. *Id*.; see also *Washington*, 283 Mich App at 672.

MCR 3.602(J)(2)(c) authorizes a court to vacate an arbitration award when "the arbitrator exceeded his or her powers[.]" "Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law." *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). Arbitration is a matter of contract and the terms of the parties' agreement dictate the arbitrator's authority. *Id*. at 32.

The lease defined the arbitrator's role as follows:

G. The arbitrator shall have no power to add to, subtract from, or alter the terms of this Lease, and shall render a written decision setting forth findings and conclusions only about the claims or disputes at issue.

-3-

The arbitration clause also provided that "[a]ny award by the arbitrator shall be final and conclusive upon the parties and a judgment may be entered in the highest court for the forum, state or federal, having jurisdiction." Where an arbitration agreement provides that a judgment may be entered on the award, it falls within the definition of statutory arbitration. *Fette v Peters Constr Co*, 310 Mich App 535, 541; 871 NW2d 877 (2015), following *Gordon Sel-Way*, 438 Mich at 495.

Defendants argue that the arbitrator exceeded his powers with regard to his interpretation and application of ¶¶ 13A and 15A of the lease by disregarding controlling principles of law. We disagree.

Paragraph 15A addresses damage or destruction of the premises and provides, in relevant part:

>     A. If, during the term of this lease, the premises are partially or totally destroyed by fire or other casualty covered by insurance so as to become partially or totally untenantable [sic], the premises must be repaired as speedily as possible at Landlord's expense unless this lease is terminated as provided below. In the event of such damage or destruction, and this lease is not terminated, there will be no abatement or reduction in the rent payments due under this lease.

The subject of insurance is addressed in ¶ 13 of the lease, which provides:

>     13. <u>Insurance</u>.
>
>     A. Tenant must, at Tenant's own cost and expense, obtain and keep in force an insurance policy for the building, including the premises, against loss or damage under a policy of fire or extended coverage insurance in an amount of not less than $500,000.
>
>     B. Tenant must indemnify Landlord and keep Landlord harmless from any liability or claim for damages that may be asserted against Landlord because of any accident or casualty occurring on or about the premises, and obtain insurance to cover Tenant's liability therefor.
>
>     C. Tenant must, at Tenant's own cost and expense, obtain and keep in force a policy or policies of public liability insurance with an insurance company approved by Landlord, with liability coverage of not less than $500,000.00 for injury or death to any one person, $1,000,000.00 for injury or death to more than one person, and $200,000.00 for damage to property.
>
>     D. Tenant must furnish Landlord with certificates other evidence acceptable to Landlord indicating that the insurance is in effect and providing that Landlord must be notified in writing at least 30 days before cancellation of, any material change in, or renewal of the policy.
>
>     E. Any insurance maintained by Tenant pursuant to this Paragraph 13 must contain a clause or endorsement under which the insurer waives all rights of

-4-

subrogation against Landlord or its agents or employees with respect to losses payable under the policy.

F. Any personal property kept on the premises by Tenant must be kept there at Tenant's sole risk.

The arbitrator ruled that the lease required the tenants, Fare and Burton, to obtain a policy of fire insurance to protect the building. The arbitrator also ruled:

The lease also provided, in paragraph 15. A. that in the event of partial or total destruction of the building by "fire or other casualty covered by insurance . . . ." the landlord would be required to repair the premises as speedily as possible. Use of the proceeds of the insurance policy obtained under paragraph 13 of the lease is the typical method of funding repairs.

Defendants argue that the arbitrator erred in ruling that the insurance proceeds should be used to satisfy the owner's obligation to rebuild the property because ¶ 15A states that the property must be repaired at the landlord's expense. Defendants argue that the arbitrator's interpretation is erroneous because ¶ 13E required the lessees to include in any insurance policy that the insurer waives all rights of subrogation against the landlord or its agents or employees with respect to losses payable under the policy. This provision, however (or at least defendants' interpretation of it) arguably conflicts with the requirement in ¶ 13A that the lessees obtain insurance coverage on the building, if they had no ownership interest in the building. Moreover, ¶ 13E may have been intended to address the landlord's potential liability for incidents related to the tenant's business activities, addressed in ¶ 13C, not coverage intended to directly benefit the owner of the building.

At any rate, resolution of the parties' dispute depended on the arbitrator's interpretation of the lease. "Arbitration agreements are generally interpreted in the same manner as ordinary contracts." *Bayati v Bayati*, 264 Mich App 595, 599; 691 NW2d 812 (2004). Accordingly, an arbitration agreement must be enforced according to its terms to effectuate the parties' intentions. *Id*. "A contract must be interpreted according to its plain and ordinary meaning." *Ally Fin, Inc v State Treasurer*, 317 Mich App 316, 329; 894 NW2d 673 (2016) (quotation marks and citation omitted). "Courts should construe contracts so as to give effect to every word or phrase as far as practicable." *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017) (quotation marks and citations omitted). "[C]ontract interpretation that would render any part of the contract surplusage or nugatory must be avoided." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).

Defendants have not shown that the arbitrator exceeded his authority in connection with interpreting the lease. See, generally, *Ann Arbor*, 284 Mich App at 144 (a court must uphold an arbitration decision if the arbitrator was arguably construing or applying the contract at issue). The arbitrator read § 13A's requirement that the lessees obtain insurance coverage for the building in harmony with ¶ 15A to conclude that the insurance proceeds were intended to fund repairs to the building after a fire loss. Defendants' argument in support of vacating the arbitrator's decision involves challenges to the arbitrator's rulings on the merits of the claims before the arbitrator with regard to the interpretation of the lease. Defendants' arguments require

-5-

this Court to delve into the arbitrator's reasoning in reaching his conclusions. This Court cannot review the arbitrator's factual findings and decision on the merits related to his interpretation of the lease. *Id*. Defendants have not shown an error of law apparent on the face of the arbitration award.

We reject defendants' argument that the arbitrator committed an error of law by awarding damages not authorized for breach of contract. Defendants correctly observe that the measure of damages for breach of contract is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been beached." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014) (quotation marks and citations omitted). "The party asserting a breach of contract . . . may recover only those damages that are the direct, natural, and proximate result of the breach." *Id*. (quotation marks and citation omitted). Defendants argue that the arbitrator erred by awarding plaintiffs $220,541, representing the value of the building destroyed in the fire, when there was no finding that any of the defendants were responsible for the fire. However, the arbitrator did not find that defendants breached the lease by causing the fire. The breach-of-contract claim involved breaches of the lease provisions pertaining to insurance and subletting. The arbitrator found that the lease required plaintiffs, as landlords, to repair the property destroyed by the fire, but also required Burton and Fare to obtain and maintain insurance for the property. The arbitrator found that Burton and Fare breached the lease by subletting the property to Grandma Kay's and naming Grandma Kay's, a nonparty to the lease, as the sole named insured. Plaintiffs were harmed in that these breaches prejudiced plaintiffs' ability to recover intended insurance proceeds directly from the insurance company, because the policy named Grandma Kay's, a nonparty to the lease, as the sole insured. The arbitrator sought to remedy these breaches by awarding damages commensurate with the amount of insurance proceeds for the fire loss, recognizing that the insurance obligation in the lease was intended to satisfy plaintiffs' responsibility to repair the property in the event of a fire covered by insurance. Defendants are precluded from attacking the factual merits of the arbitrator's decision, and defendants have not shown that the arbitrator made an error of law apparent on the face of the award with respect to the damages awarded for the breaches of the lease.

Defendants also argue that the arbitrator erred in ruling that Grandma Kay's had no insurable interest in the property. As defendants indicate, an insurable interest is necessary to support the existence of a valid insurance policy. *A B Petro Mart, Inc v Ali T Beydoun Ins Agency, Inc*, 317 Mich App 290, 298; 892 NW2d 460 (2016). However, defendants misapprehend the basis for the arbitrator's statement. Although the arbitrator commented that Grandma Kay's did not have an insurable interest, reasoning that it had no legal right to occupy the property at the time of the fire, the arbitrator recognized that his task was to determine who had a superior interest in the insurance proceeds for the fire loss. The arbitrator stated that "[t]he rights of the respective parties are determined by the agreements." The arbitrator found that Grandma Kay's "is not a party to the lease, and cannot make any claim for the insurance proceeds based upon the lease." The arbitrator further found that "Michael and Wendy Young, as owners of the property . . . and assignees of the lease agreement . . . had an insurable interest in the property. They were identified in the insurance agreement as loss payees." The arbitrator found that the Youngs had a superior right to the insurance proceeds in light of the lease agreement *and* insurance policy. Even if Grandma Kay's may have had an insurable interest based on its occupancy of the premises, this would not affect the basis for the arbitrator's ruling that the Youngs, as the intended beneficiaries of the insurance policy, had a superior right to the

insurance proceeds. "[I]n order to vacate an arbitration award, any error of law must be 'so substantial that, but for the error, the award would have been substantially different.'" *Washington*, 283 Mich App at 672. Therefore, even if the arbitrator erred in stating that Grandma Kay's did not have an insurable interest in the property, that error would not require the arbitration award to be vacated.

In their final issue, defendants argue that the arbitrator committed an error of law in ruling that the Youngs could still recover as loss payees under the insurance policy even if Grandma Kay's, the named insured, did not have an insurable interest in the property. Defendants argue that if a policy is not collectible by a named insured, a loss payee also cannot recover. Defendants cite *Old Kent Bank v Chaddock, Winter & Alberts*, 197 Mich App 372, 377; 495 NW2d 808 (1992), and *Gallant v Lake States Mut Ins Co*, 142 Mich App 183, 187; 369 NW2d 205 (1985), in support of their argument. However, both of those decisions recognize that this rule is subject to certain exceptions. *Old Kent Bank*, 197 Mich App at 377; *Gallant*, 142 Mich App at 187. In this case, the insurance company *did not contest* its liability under the policy for the fire loss. It paid on the policy and left it to the parties to determine how the proceeds should be distributed. Because the rule precluding a loss payee from recovering under an insurance policy when a named insured lacks an insurable interest is not absolute, the insurance company never contested its liability on the policy, and the arbitrator was asked only to resolve the competing claims to the distribution of the proceeds, defendants have not established that the arbitrator committed an error of law by deciding how the proceeds should be distributed, despite stating that Grandma Kay's did not have an insurable interest in the property.

Accordingly, the circuit court did not err in denying defendants' motion to vacate the arbitration award.

Affirmed.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro