*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEARBORN HILLS CIVIC ASSOCIATION INC.,
and MARGOT CLEVELAND,

        Plaintiffs-Appellants,

v

SCRIPPS MEDIA INC., DAVE LEWALLEN,
SIMON SHAYKHET, and OATH INC.,

        Defendants-Appellees,

and

VERIZON MEDIA INC., and VERIZON CMP
HOLDINGS LLC,

        Defendants.

UNPUBLISHED
December 1, 2022

No.  359221
Wayne Circuit Court
LC No.  21-007277-NZ

Before:  MURRAY, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Plaintiffs Dearborn Hills Civic Association ("DHCA") and Margot Cleveland (collectively, "plaintiffs") appeal as of right the trial court's order granting summary disposition to defendants Scripps Media Inc., Dave LewAllen, Simon Shaykhet, and Oath Inc. (collectively, "defendants").[1]  On appeal, plaintiffs challenge the trial court's determination the communications at issue were not defamatory.  We affirm in part and reverse in part.

---

[1] Plaintiffs' complaint also named Verizon Media Inc. and Verizon CMP Holdings LLC (the "Verizon defendants") as defendants in this case.  The trial court entered an order substituting Oath Inc. for the Verizon defendants.  The Verizon defendants are not parties to this appeal.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from a July 15, 2020 news story that aired on WXYZ-Detroit ("WXYZ")[2] entitled: "Claims of Unfair Treatment Made by Homeowners Disputed by [DHCA]." DHCA is an organization of volunteers tasked with monitoring and enforcing deed restrictions in the Dearborn Hills neighborhood of Dearborn, Michigan. Plaintiff Cleveland is a DHCA board member, and is also its legal counsel. Defendant Scripps is the parent company of WXYZ, defendant LewAllen is a WXYZ anchor, and defendant Shaykhet is a WXYZ reporter

The news story included interviews with three homeowners who live in the Dearborn Hills neighborhood—Mariam Sleiman, Lindsey Mahanna, and Nasser Beydoun (collectively, the "homeowners"). Defendants' story represented that these homeowners believed DHCA had unfairly targeted Arab-American homeowners. The homeowners' complaints arose from earlier legal actions by DHCA against them. Each of the homeowners had sought DHCA's approval to make certain renovations to their homes, but DHCA denied their requests on the basis of certain deed restrictions. When the homeowners refused to comply with DHCA's denials, DHCA filed suit. DHCA prevailed after a court in the respective actions found DHCA was within its authority to enforce the deed restrictions.

LewAllen introduced the news story stating: "[O]nly on Seven tonight, a legal battle between a Dearborn civic association overseeing home improvements and some property owners claiming unfair treatment based on their ethnicity. Seven Action News reporter Simon Shaykhet goes digging for answers in Dearborn and he has both sides of the story." The story cut to Shaykhet who reported:

> Three Dearborn homeowners we talked to today say they are being unfairly targeted because they are Arab-American when it comes to fixing up their homes. They say the civic association in Dearborn Hills is preventing them from doing so. But an attorney for the civic association says that couldn't be further from the truth.

The homeowners each recounted how DHCA had denied their respective requests for renovations. The story also included an interview with Cleveland who wholly denied the allegations of discrimination, claiming DHCA's denials of any home renovation projects were solely based on an objective set of criteria.

Plaintiffs filed the complaint in this case, alleging defamation, defamation by implication, defamation per se, and false light against defendants. In response, defendants filed two motions for summary disposition, each under MCR 2.116(C)(8) and (10). The trial court granted summary disposition, finding the communications at issue were not defamatory. This appeal followed.

---

[2] The news story was also embedded on defendants' websites. Defendant Scripps published a text-based version of the story on its website. Although there are technically four news stories at issue—the one shown during WXYZ's evening broadcast, the two embedded on the websites, and the text-based version—the four are virtually identical in nature. For consistency and brevity, we refer to them collectively as the "news story" or the "story."

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition. *Thomas v Bd of Law Examiners*, 210 Mich App 279, 280; 533 NW2d 3 (1995). Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). In granting defendants' motions for summary disposition, the trial court did not specify the subsection under which it granted summary disposition. However, the trial court's reasoning clearly relied on matters outside the pleadings. Therefore, we consider whether summary disposition was appropriate under MCR 2.116(C)(10). See *Edwards v Detroit News, Inc*, 322 Mich App 1, 11; 910 NW2d 394 (2017) ("Because the trial court considered factual matters outside the four corners of the complaint, we will review whether summary disposition was appropriate under MCR 2.116(C)(10).").

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis, quotation marks, citations omitted).]

With respect to defamation claims, this Court "must make an 'independent examination' of the facts to make sure that the speaker's First Amendment right of free expression is preserved." *Edwards*, 322 Mich App at 12 (citation omitted).

## III. DEFAMATION

Plaintiffs argue the trial court erred by dismissing their defamation claims because the claims were sufficiently viable at the summary disposition stage. We agree in part and disagree in part.

"[T]he media enjoy a special position in our society . . . ." , citing US Const, Am I; Const 1963, art 1, § 5. This position "is most evident on consideration of our constitutions, which provide for the freedom of the press." *Id*. As such, courts are reticent to issue rulings limiting a media defendant's speech because such a ruling risks a "chilling effect" on the constitutional protections afforded to these defendants. *Id*. However, the media's protections on speech are not unfettered, and the law of defamation creates a small window in which a plaintiff may successfully challenge a media defendant's communications. "A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *Ireland v Edwards*, 230 Mich App 607, 614; 584 NW2d 632 (1998). In these circumstances, "[t]he quandary lies in determining at what point the law of defamation abridges freedom of speech or of the press." *Reighard v ESPN, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355053); slip op at 5.

A successful defamation case requires:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Edwards*, 322 Mich App at 12 (citation omitted).]

The law surrounding defamation traditionally concerns *statements* that are defamatory in nature. See, e.g., *Kevorkian v American Med Ass'n*, 237 Mich App 1, 8; 602 NW2d 233 (1999). However, Michigan courts also recognize two subsets of defamation—defamation by implication and defamation per se. See *Hope-Jackson v Washington*, 311 Mich App 602, 620-621; 877 NW2d 736 (2015); *Hawkins v Mercy Health Servs, Inc*, 230 Mich App 315, 329-331; 583 NW2d 725 (1998). If a communication is capable of a defamatory meaning, then a court must make a number of other secondary determinations, such as which party holds the burden of proof, and the appropriate standard of proof. *Rouch v Enquirer & News of Battle Creek Mich*, 440 Mich 238, 252; 487 NW2d 205 (1992); *Mino v Clio Sch Dist*, 255 Mich App 60, 73; 661 NW2d 586 (2003).

Plaintiffs' complaint alleged defamation by defendants against DHCA and Cleveland, in her individual capacity. The trial court erred in granting summary disposition as to DHCA because the record is unclear whether the news story was an accurate representation of the homeowners' beliefs. However, the trial court did not err in granting summary disposition as to Cleveland because there were no communications against her which could be construed as defamatory.

## A. ALLEGATIONS AGAINST DHCA

A cause of action for defamation is extremely limited and it is not necessary that a news outlet be "literally and absolutely accurate in every minute detail." *Rouch*, 440 Mich at 258. Rather, Michigan courts look to whether the news story was substantially true. *Id*. at 259. "[S]light inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." *Id*. at 258-259, quoting 3 Restatement Torts, 2d, § 581, comment *f*, p 237. This Court "looks to the sting of the article to determine its effect on the reader; if the literal truth produce[s] the same effect, minor differences [are] deemed immaterial." *Id*. at 259, citing *McAllister v Detroit Free Press Co*, 85 Mich 453, 460-461; 48 NW 612 (1891).

Again, Shaykhet introduced the news story, stating:

Three Dearborn homeowners we talked to today say they're being unfairly targeted because they're Arab-American when it comes to fixing up their homes. They say the civic association in Dearborn Hills is preventing them from doing so. But, an attorney for the civic association says that couldn't be further from the truth.

The news story then cut to a segment featuring statements by Shaykhet and the three homeowners, which provided:

[*Mahanna*]: When they find out what their name is they felt like . . . the whole tone of them changed, the tone of their personality changed and their treatment of them.

-4-

[*Sleiman*]:  I see so many houses in the area they have double doors, they want me to take down my double doors.  I mean there's houses they don't have windows on the upper level of their homes, they want me to cut down my brick now and add new windows.

[*Shaykhet*]:  Nassar Beydoun says improvements on the back of his home don't harm scenery nearby, nor violate any rules.  And he got these permits from the city.  He tells us he feels personally wronged by those in power.

[*Beydoun*]:  There's one or two individuals that basically look at your plans and they decide if they like 'em or not.  There's not a set of guidelines or building specifications.

[*Shaykhet*]:  Others say the color of their brick or style of front entrance are reasons for projects being shut down in the last couple of years, despite the fact that other work just like it was allowed.  We reached an attorney for the civic association who denies those claims.

Plaintiffs assert that there is a conflict between Shaykhet's statement that "three" homeowners alleged discrimination, when, in fact, only one homeowner—Mahanna—made any allegation of discrimination.  Specifically, plaintiffs emphasize that neither Sleiman nor Beydoun made any claim of discrimination.  Plaintiffs challenge the truthfulness of the new story in light of Shaykhet's assertion that *all three* homeowners featured in the new story believed DHCA engaged in discrimination.

As noted, journalists enjoy some measure of discretion in presenting information, see *Rouch*, 440 Mich at 258, and defendants' failure to publish any communications by Sleiman and Beydoun alleging discrimination could be a product of this discretion.  Yet, on this record, the news story included only one homeowner who specifically alleged discrimination, while the other two homeowners featured in the news story did not.  As plaintiffs argue, the clear inconsistency between defendants' assertions in the story and the actual allegations made by Sleiman and Beydoun featured in the story could be revealed in discovery.

At the summary disposition stage, courts must consider the evidence in a light most favorable to the non-moving party, and should only grant summary disposition where there is no genuine issue of fact.  *El-Khalil*, 504 Mich at 160.  Construing the evidence in a light most favorable to plaintiffs, we conclude the evidence fails to conclusively demonstrate defendants' news report about the homeowners' beliefs about DHCA's conduct was substantially true.  The trial court's grant of summary disposition was premature because there remained a question of fact about the homeowners' beliefs.  We reverse the trial court's grant of summary disposition against DHCA and remand for further proceedings as to the limited issue of defamation by defendants against DHCA.  Because we conclude the trial court erred regarding this preliminary question of whether defendants accurately reported the homeowners' beliefs, we need not consider plaintiffs' remaining arguments on behalf of DHCA.

B. ALLEGATIONS AGAINST CLEVELAND

Plaintiffs' complaint also alleged defamation per se by defendants against Cleveland. MCL 600.2911(1), which was enacted to address actions for libel and slander, states: "Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense."

> MCL 600.2911(1) is the codification of the common-law principle that words imputing a lack of chastity or the commission of a crime constitute defamation per se and are actionable even in the absence of an ability to prove actual or special damages, as evidenced by the statute's indication that such words are "actionable in themselves . . . ." [*Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000).]

In these circumstances, "the person defamed may bring a civil action and receive at least nominal damages in the absence of any proof of actual or special damages." *Id*. at 728-729.

Plaintiff's argument alleging defamation per se against Cleveland lacks a factual basis. Defendants' news story did not make *any* allegations against Cleveland in her individual capacity, let alone allege criminal activity or lack of chastity by Cleveland. *Cetera v Mileto*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356868); slip op at 7. Because there are no communications which could be construed as defamation per se against Cleveland, the trial court did not err in granting summary disposition as to these specific allegations.

IV. FALSE LIGHT

Plaintiffs next argue the trial court erred in dismissing their claims of false light invasion of privacy. We disagree.

> In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. [*Derderian v Genesys Health Care Sy*s, 263 Mich App 364, 385; 689 NW2d 145 (2004) (quotation marks and citations omitted).]

Claims of this nature are "limited to situations where the plaintiff is given publicity." *Id*.; quoting *Sawabini v Desenberg*, 143 Mich App 373, 381; 372 NW2d 559 (1985).

Plaintiffs' arguments regarding this issue are a compilation of conclusory statements which fail to explain how the law relates to the facts of this case. A party cannot "simply . . . announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for [their] claims, or unravel and elaborate for [them the] arguments, and then search for authority either to sustain or reject [their] position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Plaintiffs have waived these arguments and we decline to consider them now.

Reversed in part and affirmed in part. We remand this case to the trial court for an order consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron