*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STACY HAWKINS,

        Plaintiff-Appellant,

v

LARISSA FUESTER,

        Defendant-Appellee.

UNPUBLISHED
January 23, 2025
2:50 PM

No. 369316
Saginaw Circuit Court
LC No. 23-000692-NO

Before: M. J. KELLY, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition pursuant to MCL 2.116(C)(10) (no genuine issue of material fact), and dismissing plaintiff's claim for slander under MCL 600.2911.[1] We affirm.

---

[1] In pertinent part, MCL 600.2911 provides:

> (1) Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense.

> (2)(a) Except as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.

> (b) Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of

-1-

## I. FACTUAL BACKGROUND

Plaintiff, the general manager of a hotel in Bridgeport, filed a complaint for slander *in propria persona* against defendant, a police officer with the Bridgeport Charter Township Police Department. Plaintiff alleged that on March 26, 2023, at about 2 a.m., defendant responded after a hotel employee called for assistance in removing a disruptive guest. Plaintiff asserted that he was not at the hotel at that time and that defendant "had no knowledge of [plaintiff's] involvement with the decision to have the disruptive guest removed." According to plaintiff, after defendant arrived and spoke to the guest, the guest informed defendant that "he was upset about being told that he had to leave the hotel." Plaintiff further alleged that defendant responded to the guest by repeatedly telling him that plaintiff "was the problem," while the guest described the issue as being with the hotel security guard. Defendant also told the guest that if it were up to her, the guest "would not have to leave the hotel" and that she did not "agree with 90%" of what the hotel does. This interaction was captured by the hotel security camera.[2]

After defendant removed the guest from the hotel, defendant spoke to the hotel's female security guard, who she was meeting for the first time, while the female front desk employee was present. The security guard was explaining that she was following plaintiff's directions when

---

exemplary or punitive damages. For libel based on a radio or television broadcast, the retraction shall be made in the same manner and at the same time of the day as the original libel; for libel based on a publication, the retraction shall be published in the same size type, in the same editions and as far as practicable, in substantially the same position as the original libel; and for other libel, the retraction shall be published or communicated in substantially the same manner as the original libel.

\* \* \*

(7) An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

"Under MCL 600.2911(1), statements imputing a lack of chastity or the commission of a crime constitute defamation per se and are actionable in the absence of an ability to prove actual or special damages." *Hope-Jackson v Washington*, 311 Mich App 602, 620-621; 877 NW2d 736 (2015), citing *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000). " 'Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount.' " *Cetera v Mileto*, 342 Mich App 441, 450; 995 NW2d 838 (2022), quoting *Burden*, 240 Mich App at 728. "With respect to defamation per se, the presumption of general damages is well settled in Michigan jurisprudence." *Cetera*, 342 Mich App at 450-451. " 'Accordingly, where a plaintiff brings an action alleging words imputing lack of chastity or commission of crime under MCL 600.2911(1), the inability to prove damages is not fatal to the claim.' " *Id*. at 451, quoting *Burden*, 240 Mich App at 729.

[2] The quality of this video was questioned by defendant during her deposition, but plaintiff posted the video on YouTube, available at <https://youtu.be/hjRxS8utNVk> (accessed January 23, 2025).

defendant remarked: "[Plaintiff] will also kick people out if they don't sleep with him so. Let's just be real." Again, defendant's statements were recorded by a hotel security camera and depict defendant laughing after making each statement.[3]

Later, the front desk worker told the hotel's breakfast person about defendant's statement. Hours later, the front desk worker also shared defendant's statement with plaintiff, who "went into shock and began laughing and shaking his head in disbelief." Plaintiff alleged that he "suffered extreme mental distress" from the characterization of "him as a person who abuses his authority to force women to have sex with him or suffer adverse consequences." Indeed, defendant's statement allegedly "caused [plaintiff] extreme emotional distress and humiliation particular[ly] where he ha[d] already been subjected to (18) eighteen years and (10) ten months of imprisonment based on a false accusation," and that "some (33) thirty-three years later . . . he still [sought] ways to prove his innocence."[4] Plaintiff further alleged that three days after defendant made her statement, one of the hotel's female employees "quit showing up for work and quit answering [his] calls[.]" Plaintiff alleged that defendant "made this false statement" in order to "paint [him] in an extremely negative light and convey her disdain for him." Plaintiff claimed he suffered damages in excess of $25,000.[5]

On June 21, 2023, the trial court issued an initial scheduling order, stating that an early scheduling conference would take place on September 26, 2023 via Zoom. For unknown reasons,

---

[3] Defendant again challenged the clarity of this video, which plaintiff posted on YouTube, available at <https://youtu.be/lVLZj47wogU> (accessed January 23, 2025). Even so, defendant testified: "I don't know if that's exactly what I said, but that is the general idea of what I said."

[4] The docket entries plaintiff provided to the trial court reflect that a jury convicted him of third-degree criminal sexual conduct (incapacitated victim), MCL 750.520d(1)(c), in 1989. *People v Hawkins*, Washtenaw County Circuit Court Case No. 1989-023861-FH. The sentencing court in plaintiff's criminal case sentenced him to 3 to 15 years' imprisonment as a third-habitual offender, MCL 769.11, to be served consecutively to the sentence he was already serving. This Court affirmed plaintiff's conviction. *People v Hawkins*, unpublished per curiam opinion of the Court of Appeals, issued August 24, 1992 (Docket No. 124012). According to plaintiff, the parole board repeatedly denied him parole because he refused to admit his guilt before paroling him in 2008. Plaintiff also presented post-conviction polygraph results that he was being truthful when he said he attempted to awaken the victim before sexually touching her and that she responded in a manner that would have led a reasonable person to believe that she consented. In 1999, plaintiff filed a motion for relief from judgment, which the trial court denied. This Court denied plaintiff's subsequent delayed application for leave to appeal and his motion for remand. *People v Hawkins*, unpublished order of the Court of Appeals, entered August 21, 2000 (Docket No. 225583), lv den and reconsideration den 463 Mich 977 (2001). Plaintiff filed four additional motions for relief from judgment from 2005 through 2021, which the Washtenaw County Circuit Court denied.

[5] Plaintiff later asserted that he was entitled to non-economic damages of $1,700,000 (34 years x $50,000) and exemplary damages of $5,400,000.

the scheduling order was not postmarked or sent to plaintiff until July 26, 2023; however, he received it three days later, but nevertheless failed to attend the conference.

In the interim, plaintiff served his initial disclosures on July 14, 2023. Defendant moved to strike the disclosures and/or to dismiss plaintiff's complaint pursuant to MCR 2.115. More specifically, defendant argued that plaintiff was required to file his initial disclosures by May 24, 2023, and thus, plaintiff's filing was nearly two months late. Defendant also argued plaintiff's case should be dismissed for "failure to state a claim." On August 7, 2023, the trial court denied defendant's motion.

On July 17, 2023, plaintiff deposed defendant. Defendant admitted that she had never met plaintiff, but she was given "the impression" that when the hotel employees requested the removal of a guest, they had "sought [plaintiff's] permission to have the people removed." Defendant attributed her later remark about plaintiff to interactions with and comments by female guests in the course of removing them for trespassing at the hotel's request. Although defendant did not recall the names of the women she had encountered who had made such allegations against plaintiff and the police did not keep records of trespassers unless they were repeat offenders, defendant testified that dispatch should have records regarding the times the police responded to trespassing complaints at the hotel.

On August 30, 2023, defendant served interrogatories, document requests, and a request for admissions on plaintiff. Plaintiff's responses were due by September 28, 2023; however, plaintiff did not file any responses or objections.

Plaintiff also attempted to arrange the depositions of police officer Mary Buszek (Buszek) and Bridgeport Charter Township Chief of Police Jeff Roberts (Roberts).[6] Initially, defense counsel was cooperative, agreeing that plaintiff would depose Buszek on July 12, 2023, with plaintiff paying "the $1,030 deposit the company handling the deposition required from him." According to plaintiff, shortly before the deposition, defense counsel notified plaintiff that neither witness would be deposed without a subpoena.

Plaintiff asserts that on August 28, 2023, he e-mailed the court requesting subpoenas for Buszek and Roberts. Thereafter, he "repeatedly called the court looking for the subpoena[s,] but no one would answer and tell him the status." According to plaintiff, the court informed him that his requested subpoenas had been delayed because a court staff member was out of the office for medical reasons. Plaintiff then decided to "not pay the deposit to the stenographer because he did not know if the court was going to issue the subpoena[s]."

---

[6] Defendant's appendix on appeal includes material that is not in the lower court record, which we cannot consider. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 57; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal."); MCR 7.210(A)(1) ("In an appeal from a lower court, the record consists of the original documents filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced.").

Two weeks after plaintiff requested the subpoenas, he received them and noticed both depositions for October 3, 2023, one at 10 a.m. and the other at 11 a.m. At 10:53 a.m., defense counsel sent plaintiff an e-mail, asserting that Buszek and Roberts had "cleared their schedules" in order to participate in the depositions, but plaintiff had failed to provide any Zoom information. Plaintiff later explained that by the time the subpoenas were issued, he had "dipped into the $1,000 set aside" for the stenographer's deposit and used it to pay for brakes for his car. Because plaintiff was unable to pay the deposit,[7] the stenographer cancelled the depositions. In defense counsel's view, plaintiff knew the depositions were cancelled, but failed to inform defendant or the deponents. Plaintiff asserted that he believed that the court reporter's e-mail "was being sent to everyone."[8] In plaintiff's view, the delay in receiving the subpoenas from the court "eliminated another 14 days" from his time for discovery and for amending his complaint.

On October 4, 2023, at 9:00 a.m., defendant was scheduled to depose plaintiff via Zoom. Plaintiff asserted that he logged onto the Zoom link as scheduled and defendant did not appear. Plaintiff claimed that he "screenshotted his presence on the link and defense counsel's absence." According to plaintiff, Zoom reported that defense counsel had not even started the meeting. Yet, defense counsel sent plaintiff an e-mail at 9:11 a.m., stating that he had logged onto the Zoom link and that plaintiff had "not signed in to the link that [defense counsel's] office [had] provided from the court reporter." Defense counsel's e-mail advised that he would remain waiting on the Zoom link until 9:15 a.m., exit the deposition if plaintiff failed to appear, and would seek a default for plaintiff's failure to participate in discovery. Defense counsel further informed plaintiff that he would consider filing a motion for costs, adding that he would soon be filing a motion for summary disposition. Defense counsel advised plaintiff that he would forego filing the dispositive motion if plaintiff was willing to sign a stipulation and order of voluntary dismissal with prejudice and without costs. Defense counsel noted that the offer was available until defendant's dispositive motion was filed.

At 10:19 a.m., plaintiff responded to defense counsel's e-mail, reporting to have been on Zoom waiting for defense counsel from 9:01 a.m. to 10:11 a.m. Plaintiff rejected defense counsel's offer to voluntarily dismiss the case and accused the police of continued corruption. Plaintiff stated that the law was on his side and that, if defendant did not settle with plaintiff, the court would resolve the matter. At 11:13 a.m., plaintiff followed up with an e-mail purporting to attach a screenshot of the link provided to him for his Zoom deposition along with a screenshot showing that he was logged in.[9]

---

[7] Plaintiff also reported not receiving "payment from a business" as a separate reason for not being able to pay the deposit. On appeal, plaintiff identified the reason as being "an emergency."

[8] Plaintiff later claimed that he "thought the court reporter would also be send[ing] the cancellation notice to the non-parties as [the reporter] was going to email the Zoom information to them."

[9] On appeal, defendant asserts that the parties' attempts to log onto Zoom were in vain because of the court reporter's scheduling error.

A week later, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that plaintiff failed to set forth an action for slander under MCL 600.2911. Defendant's motion asserted:

> Pursuant to the admissions, Plaintiff cannot establish liability because he has conceded factual determinations that undermine any liability ever being invoked. For example, under *Reighard* [*v ESPN, Inc*, 341 Mich App 526, 537-538; 991 NW2d 803 (2022)], Plaintiff must establish that his reputation in the community has been diminished, but he cannot do so because he has admitted that he already had a reputation for an offense that is far more egregious to his reputation ***and*** that nobody who was privy to the comments he claims are defamatory has a lowered opinion of him. Also, under MCL 600.2911, the only legal basis upon which Plaintiff has sought relief, he is required to demonstrate "actual damages." However, Plaintiff's disclosures are completely bereft of any evidentiary support of any damages and Plaintiff has now legally conceded that he has no basis for any monetary damages. He further concedes having never undergone any sort treatment of any kind that would substantiate a damage claim.

Defense counsel further asked the court to sanction plaintiff for his failure to participate in discovery and his improper remarks.

Plaintiff answered that his failure to respond to defendant's request for admissions, resulting in them being admitted, did not eliminate genuine issues of material fact regarding the slander claim. Plaintiff referenced the video of defendant's remarks, contending defendant's statement was slanderous because it "was false and maligned Plaintiff and his chastity." Plaintiff further argued that there existed a genuine issue of material fact as to whether he "suffered harm [for] which he should recover monetary damages[.]" Finally, plaintiff argued that sanctions were not warranted.

Plaintiff also filed a motion for leave to amend his complaint and to file late answers to defendant's request for admissions. Plaintiff's amended complaint sought to add a count of slander and intentional infliction of emotional distress against Buszek and counts against the Bridgeport Charter Township Police Department for failing to train its officers to conduct their investigations in conformance with the state and federal constitutions. As to Buszek, plaintiff asserted:

> Buszek not only submitted an affidavit to support [defendant's] defense[,] but that affidavit contained perjured, false statements. That affidavit also revealed that Buszek defamed Plaintiff to coworkers with false statements.[10]

---

[10] During the course of proceedings, Buszek provided an affidavit in support of defense counsel's response to plaintiff's motion to sanction counsel for an assertion he made in setting forth defendant's affirmative defenses; namely, that plaintiff "pleaded guilty to sexual assault of an incapacitated person, thus obviating any claim for chastity that he would seek to protect." In pertinent part, Buszek's affidavit read:

Plaintiff alleged that he had "evidence supporting his claims against . . . Buszek and the Bridgeport Township Police Department but wanted to fully uncover [their] possible defenses" and "uncover any additional evidence that would further strengthen" his claims against them. According to plaintiff, there had not been an undue delay in making his request for leave to amend, and defendant would not be unfairly prejudiced by the proposed amendment.

Defendant opposed plaintiff's motion to amend and to file a late answer to defendant's request for admissions. Defendant also filed a reply to plaintiff's response, contending that plaintiff failed to identify a question creating a genuine issue of material fact warranting determination by a fact-finder.

---

3. In the course of my duties as an Officer, I have been in verbal contact with [plaintiff] and . . . , at some point, [he] communicated to me that he entered a plea agreement to his sexual assault charge, resulting in his conviction and extended incarceration.

4. I do not claim to know if [plaintiff's] representation about entering a plea was accurate or not, only that this was the general gist of the representation that [plaintiff] made to me.

5. I have communicated that representation of a plea agreement [being] entered . . . made by [plaintiff] to others within the department.

To rebut the claim in Buszek's affidavit, plaintiff provided edited security footage from February 23, 2023, pertaining to the incident that resulted in Buszek responding to a request to evict disruptive guests, who had threatened the front desk clerk, after plaintiff had interacted with them. When Buszek inquired why plaintiff, who was on a speakerphone, had been watching the guests for an extended period of time, plaintiff "became angry and said that he keeps himself on camera so no one can lie on him again." When Buszek asked him to explain, he expounded on his frustration about being "falsely accused" and convicted of criminal sexual conduct "more than thirty-three years ago," and how he "spent 18 years in [prison] for something he is innocent of." Because plaintiff's register of actions from his prior criminal case reflected that plaintiff was convicted after a jury trial, plaintiff asserted that Buszek falsely told fellow law-enforcement officers, including defendant, that plaintiff actually told her that "he pled guilty in exchange for a lighter sentence." Even so, plaintiff later admitted that he did not have any information regarding "which officers" Buszek had allegedly spoken to, or other details, such as "the date that she supposedly" made the false comment about a plea. Plaintiff had hoped to discover that information during Buszek's scheduled deposition. But, as already discussed, he failed to pay the required deposit and Buszek was never deposed.

By way of further background, plaintiff filed a complaint with the police department regarding Buszek's actions on February 23, which was investigated. A meeting was arranged, where plaintiff believed that Buszek asked him about his conviction and plaintiff "believe[d]" that he told her he had a jury trial and testified in his own defense. In plaintiff's view, this meeting "seemingly [ended] on good terms."

At the hearing on the parties' motions, defendant argued that because plaintiff failed to timely respond to defendant's request for admissions within 28 days, they were deemed admitted under the court rules. Defendant maintained that summary disposition was appropriate because: (1) her statement did not damage plaintiff's reputation, given that plaintiff admitted that he served eighteen years in prison for criminal sexual conduct, a fact of record more damaging than defendant's statement; (2) plaintiff suffered no monetary damages as he did not seek any medical, psychological, or psychiatric treatment as a result of defendant's statement; (3) "the hotel employees to whom the allegedly defamatory statements were stated have not less[e]ned their opinion of him; nor has the public,"; and (4) although defendant's comment may have been "offensive," it did not "impute [plaintiff's] chastity" for purposes of MCL 600.2911. Defense counsel said that, while taking defendant's deposition, plaintiff "never even asked her where the basis for her comments came from,"[11] that defendant had been "called to the hotel on more than one occasion to evict guests, at [plaintiff's] or his staff's insistence," and that "those guests told [her], he came onto me; I said no, and he kicked me out." Finally, defendant asked for "an award of sanctions of fees and costs . . . because there's been a lot of time wasted." Defendant stated that plaintiff noticed depositions and failed to appear, plaintiff failed to attend the scheduling conference despite having notice of it, and plaintiff repeatedly engaged in "negative commentary" and insulted defense counsel in plaintiff's e-mails.

Plaintiff admitted missing the scheduling conference, explaining "I've got six kids, a . . . girlfriend with high-risk pregnancy. I was a bit overwhelmed."[12] Plaintiff also failed to answer defendant's request for admissions and other discovery because he considered the discovery requests "voluminous," "invasive," and opined that the information sought was inadmissible. Further, caselaw supported plaintiff's ability to submit a late answer. Plaintiff reiterated that he filed a motion to amend his complaint and file delayed answers to defendant's request for admissions. Plaintiff further argued that the matters defendant asked him to admit, even if taken as true, were insufficient to "overcome" the elements of slander, and that MCL 600.2911 covered damages arising from "feelings." Plaintiff told the court, "I'm pro per; I did the best I could."

The trial court informed plaintiff, "[Y]ou have the right to represent yourself. However, you still have an obligation to follow the Michigan Court Rules in doing so." The court also said:

> I'm very concerned . . . that . . . you're not appearing for conferences when you're supposed to. You didn't appear.

---

[11] When plaintiff deposed defendant, he asked her: "Can you explain why you made that statement?" Later, plaintiff inquired: "And again just so that I'm clear, because we went back to refresh so we could make sure we understand what your position is, your reason for making that statement was based on what evidence?"

[12] The trial court later noted that plaintiff proffered other reasons for missing the early scheduling conference, including the delay in receiving notice, despite receiving notice about 60 days before the conference hearing.

Apparently, you had some excuse, but nothing was conveyed to the Court, nothing was told to the defense counsel beforehand.

You set depositions, and did not appear. You've been served discovery; you do not respond timely. You did not provide disclosures, as required, timely, under the court rules.

So I understand that there's some latitude that needs to be given to you, sir, because . . . you've chosen not to be represented [by an attorney]. And I would encourage you to get representation. But you've chosen not to be represented, and so you have to know what the court rules are, and follow those court rules. And every time they're not complied with, you can't just say, I'm a, you know, pro-se litigant; you have to give me latitude.

You know, at some point, the Court is going to say, you've gotten enough latitude . . . .

In regard to plaintiff's motion to amend his complaint and to file late answers to defendant's request for admissions, defendant argued:

At this point, now that we're done with discovery,[13] after it's been extended, after he didn't disclose, after he didn't show up at deps that he noticed, Your Honor, I think that . . . if it was an attorney, the ship would have sailed on granting latitude long ago. It has sailed with regard to him, as an in-pro-per plaintiff, because he hasn't done anything to move his case forward. He's deposed no witnesses,[14] he has submitted no discovery, and he didn't provide disclosure until [defendant] begged him in three e-mails, within the course of two months, and said [defendant would] have to bring a motion.

Defendant added that plaintiff's amended complaint would be futile because of plaintiff's admissions that he suffered no damages.

After taking the matter under advisement, the trial court issued a 14-page opinion and order granting defendant's motion for summary disposition, dismissing plaintiff's slander suit against defendant, and denying plaintiff's motion to amend his complaint and to file late responses to defendant's request for admissions. As to the motion for summary disposition, the court determined that "[p]laintiff failed to substantively respond to [defendant's] motion or provide affidavits as required by MCR 2.116(G)." Further, defendant served its request for admissions on August 30, 2023. Plaintiff had 28 days to respond or the requests would be deemed admitted, MCL 2.312(B)(1). Plaintiff did not respond until October 25, 2023. The trial court recognized its

---

[13] The motions were heard on Monday, November 27, 2023, and discovery was scheduled to end on Friday, December 1, 2023.

[14] As already discussed, plaintiff only deposed defendant.

-9-

discretion to allow a party to amend an admission for good cause and its ability to condition amendment on terms that were just. MCR 2.312(D)(1). But, after applying the three-factor balancing test from *Janczyk v Davis*, 125 Mich App 683, 686; 337 NW2d 272 (1983), the court denied plaintiff's motion to amend and granted defendant's motion for summary disposition.

Addressing plaintiff's motion for leave to amend his complaint, the trial court reasoned that its scheduling order set a deadline of August 21, 2023 for amendment of the pleadings; however, plaintiff did not file his motion until October 25, 2023. The trial court further determined that plaintiff recognized the potential claims to be made against Buszek and the police department in advance of the August deadline, but opted to wait. Because plaintiff failed to comply with the court's scheduling order, the court determined that he engaged in undue delay and denied his motion to amend his complaint.

## II. ANALYSIS

### A. AMENDED COMPLAINT

Plaintiff contends that the trial court abused its discretion by denying his motion to amend his complaint. We disagree.

This Court reviews the trial court's decision regarding a motion for leave to amend pleadings for an abuse of discretion. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted).

Under MCR 2.118(A)(2), "Except as provided in subrule (A)(1),[15] a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires."

MCR 2.401(B)(2)(a)(ii) provides that "[a]t an early scheduling conference . . . , or at such other time as the court concludes that such an order would facilitate the progress of the case, the court shall establish times for events . . . , including . . . the amendment of pleadings [or] adding of parties . . . ." "Under this rule, the trial court has the discretion to decline to entertain motions beyond the stated deadline." *Kemerko Clawson LLC v RXIV Inc*, 269 Mich App 347, 349; 711 NW2d 801 (2005).

In this case, the trial court issued an initial scheduling order on June 21, 2023, setting the deadline for amendment of the pleadings and addition of any parties for "60 days from the date of" its order. The court's order cautioned "that failure to comply with [the order] m[a]y result in

---

[15] Under MCR 2.118(A)(1), "[a] party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading."

sanctions[,] including denial of all untimely motions." Accordingly, the last date to file a timely amended pleading or add parties was August 21, 2023. MCR 1.108(1).

There is no dispute that plaintiff did not receive the initial scheduling order until July 29, 2023. Even so, plaintiff did not move to file his amended complaint until October 25, 2023, after defendant had filed her motion for summary disposition. Plaintiff attributed his delay to investigating Buszek's affidavit, which was filed on June 8, 2023, and asserts that justice required the trial court to allow him to amend his pleadings.

Review of the record reveals that plaintiff had sufficient time to investigate before deciding whether he wished to amend his complaint by August 21, 2023. When plaintiff provided his initial disclosures on July 14, 2023, he identified Buszek as an officer who knowingly made a false statement about him to third parties. Plaintiff also identified both Buszek and her coworkers as trial witnesses and secured the hotel videotape of his exchange with Buszek. Plaintiff further identified Buszek's affidavit as a trial exhibit. And, when plaintiff deposed defendant on July 17, 2023, he inquired about the police department's training and whether plaintiff and Buszek had conversations regarding plaintiff. Plaintiff "admittedly delayed making the motion" to amend his complaint. Further, plaintiff made no effort to abide by the court's order and pertinent deadlines and plaintiff's "[a]ppearance in pro per [did] not excuse all application of [the] court rules[.]" *Bachor v Detroit*, 49 Mich App 507, 512; 212 NW2d 302 (1973). Under these circumstances, we conclude that the trial court's enforcement of the deadline for amending the complaint, which would have added two parties, four counts, and, in part, a separate incident, within days of the discovery cut-off date, was well within the range of reasonable and principled outcomes.[16]

## B. SUMMARY DISPOSITION

Plaintiff also contends that the trial court erred in dismissing plaintiff's claim because it did not apply the admissions to the elements of slander in order to determine whether a genuine issue of material fact existed. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Cetera v Mileto*, 342 Mich App 441, 446; 995 NW2d 838 (2022). Summary disposition is appropriate under MCR 2.116(C)(10) when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." " 'When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial.' " *Cetera*, 342 Mich App at 447, quoting MCR 2.116(G)(4). " 'A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds

---

[16] On appeal, defendant contends that the amendment involving Buszek would be futile given that the statement in her affidavit was absolutely privileged because it was provided during the course of judicial proceedings, citing *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006). We need not address this argument in light of our disposition.

-11-

might differ.' " *Id*. at 448, quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The elements of defamation, which encompasses slander and libel, are: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). Under MCL 600.2911(1), "[w]ords imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense." See also *Hope-Jackson v Washington*, 311 Mich App 602, 620-621; 877 NW2d 736 (2015), citing *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000). " 'Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount.' " *Cetera*, 342 Mich App at 450, quoting *Burden*, 240 Mich App at 728. "With respect to defamation per se, the presumption of general damages is well settled in Michigan jurisprudence." *Id*. at 450-451. And, " '[a]ccordingly, where a plaintiff brings an action alleging words imputing lack of chastity or commission of crime under MCL 600.2911(1), the inability to prove damages is not fatal to the claim.' " *Id*. at 451, quoting *Burden*, 240 Mich App at 729.

As to the request for admissions, MCR 2.312(B)(1) provides that "[e]ach matter as to which a request [for admission] is made is deemed admitted unless, within 28 days after service of the request, . . . the party to whom the request is directed serves on the party requesting the admission a written answer or objection addressed to the matter." Accordingly, "where a party served with a request for admissions neither answers nor objects to the request, the matters in the request are deemed admitted." *Medbury v Walsh*, 190 Mich App 554, 556; 476 NW2d 470 (1991). See also MCR 2.312(D) ("A matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of an admission. For good cause the court may allow a party to amend or withdraw an admission. The court may condition amendment or withdrawal of the admission on terms that are just."). "Further, the admissions resulting from a failure to answer a request for admissions may form the basis for summary disposition." *Medbury*, 190 Mich App at 556.

In this case, defendant served her request for admissions to plaintiff on August 30, 2023, and plaintiff was required to respond or object to defendant's request for admissions within 28 days or by September 28, 2023. See MCR 2.312(B)(1) and MCR 1.108(1). But plaintiff did not file any responses or objections. In its opinion and order, the trial court determined that "the Requests for Admissions were deemed admitted . . . ."

The following statements were included in defendant's request for admissions, and thus, deemed admitted: (1) plaintiff "served 18 years for the sexual assault of an incapacitated person"; (2) plaintiff's "rape plea deal is no less damaging to one's reputation in the community than is a rape conviction"; (3) plaintiff told "Buszek that he was 'convicted' of a sexual assault crime"; (4) "an assertion that Plaintiff would evict hotel guests if they did not sleep with him is not as egregious to one's reputation as is a rape conviction of an incapacitated person"; (5) plaintiff "has no community witnesses through whom he can prove any diminution of his reputation as a result

-12-

of anything stated by Defendant"; (6) plaintiff was never "told by the security personnel or desk clerk" at the hotel "that either person has a lower view of Plaintiff's reputation in the community"; (7) plaintiff "has undergone no medical, psychological or psychiatric intervention since the time when he learned of Defendant's comment that is the subject of this lawsuit"; and (8) plaintiff "has no basis for the monetary damages claimed."

Although plaintiff argues that the trial court never compared the admissions to the elements of slander in order to determine whether there was a genuine issue of material fact, the trial court determined that plaintiff failed to provide any argument in support of his position[17] or provide any documentary evidence to establish a genuine issue of material fact for trial. The trial court explained:

> In fighting a motion for summary disposition, Plaintiff must do more than assert his position, he must substantiate and support it through well-reasoned legal arguments showing a genuine issue of material fact that remains at issue and must further do [it] through the filing of affidavits, depositions and other documentary evidence.

Because plaintiff fails to address the bases for the trial court's ruling, this Court need not even consider granting him relief. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Regardless, plaintiff admitted that he had "no basis for the monetary damages claimed," thereby entitling defendant to summary disposition. Further, plaintiff admitted that his reputation suffered more from his earlier sexual assault conviction than defendant's statement, that the two employees to whom defendant had made the statement did not lower their opinion of him, that he had no witnesses to establish that his reputation in the community was diminished, and that plaintiff himself laughed when he heard about the statement. In light of the admissions and plaintiff's failure to address the grounds for the trial court's ruling, the trial court did not err in granting defendant's motion for summary disposition.

## D. CONSTITUTIONAL ISSUES

Plaintiff further contends that he "was deprived of his First and Fourteenth Amendment rights to equal access to the court where he was sanctioned for defects but [the] court and [opposing] counsel were not[.]"[18] Because this issue was not raised below, it is waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 3. Regardless, we will briefly address it.

---

[17] The law is clear that it is insufficient for a party to "simply announce a position or assert an error and then leave it up to [the court] to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Indeed, "[a] party abandons a claim when it fails to make a meaningful argument in support of its position." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

[18] To be clear, the trial court did not impose monetary sanctions on plaintiff.

-13-

Plaintiff relies upon *Haines v Kerner*, 404 US 519; 92 S Ct 594; 30 L Ed 2d 652 (1972), for the proposition that "pro se litigants should be held to less stringent standards in their filings than the standards trained lawyers are held to." In *Haines*, 404 US at 520, the United States Supreme Court recognized that pro se litigants should be afforded some leniency in pursuing their claims, observing that the allegations in a pro se complaint are held "to less stringent standards that formal pleadings drafted by lawyers[.]" But, the Supreme Court later explained: "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedure and substantive law." *Faretta v California*, 422 US 806, n 46; 95 S Ct 2525; 45 L Ed 2d 562 (1975). See also *Bachor*, 49 Mich App at 512 ("Appearance in pro per does not excuse all application of [the] court rules[.]).

In this case, the trial court initially recognized that a plaintiff proceeding in pro per is afforded a degree of leniency. It further recognized that plaintiff was an experienced in-pro-per litigator,[19] who repeatedly and intentionally disregarded the court rules. Thus, despite initially affording plaintiff leniency, the trial court declined to extend him further leniency based on his in pro per status when he failed to comply with the court rules. In doing so, the trial court did not deprive plaintiff of access to the courts or due process.

Plaintiff also contends that the trial court issued a scheduling order that required him to adhere to certain timeframes, but it did not mail the order to him for 38 days. Regardless of this unexplained delay, we cannot conclude that plaintiff was denied access to the court because he prosecuted his case without it, filing initial disclosures and noticing and conducting defendant's deposition.

Plaintiff next complains about the two-week delay in issuing the subpoenas for Buszek and Roberts, stating that because he was representing himself, he "was precluded from issuing a subpoena to get those he desired to depose to show up for their depositions." It is true that the court rules allow a represented party to issue a subpoena to a non-party for a deposition while an unrepresented party may move the court of issuance for non-party discovery subpoenas. MCR 2.305(A). But plaintiff secured the subpoenas and noticed the taking of the depositions. Ultimately, however, the reason that the depositions did not take place was plaintiff's failure to pay the required deposit to the court reporting firm. Stated otherwise, nothing about plaintiff's compliance with the court-rule process denied him access to the court or due process.

Plaintiff further contends that defense counsel exacerbated the delays in deposing Buszek after initially stating that he would assist plaintiff, and, then, became non-cooperative shortly before Buszek's scheduled deposition. Plaintiff adds that the court "did not verbally sanction [defense counsel] for changing the deposition schedule and precluding [plaintiff] from taking Buszek's deposition at the scheduled time." Furthermore, in plaintiff's view, defense counsel restricted plaintiff's ability to secure Buszek's deposition by offering limited dates for rescheduling it, compromising plaintiff's ability to bring his case before the court in a meaningful time and manner. Plaintiff relies upon *Armstrong v Manzo*, 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965) (quotation marks and citation omitted), where the United States Supreme Court

---

[19] The trial court's Westlaw search revealed at least nine entries involving plaintiff as a pro se litigant.

recognized that "[a] fundamental requirement of due process is the opportunity to be heard. [And, it] is an opportunity which must be granted at a meaningful time and in a meaningful manner."

Review of the materials plaintiff provided on appeal[20] reflects that defense counsel initially sought to inquire about the anticipated length of Buszek's deposition given an intervening court hearing he had scheduled. After plaintiff responded that he did not know how long the deposition would take, defense counsel discovered that Buszek was actually unavailable to attend the deposition because plaintiff had never notified her that he scheduled it. Defense counsel even contacted the court reporting agency and advised plaintiff that there would be no penalty for rescheduling Buszek's deposition due to her unavailability. Accordingly, there was no reason to sanction defense counsel and his actions did not prevent plaintiff from deposing Buszek. Again, the reason plaintiff did not depose Buszek (and Roberts) on the rescheduled date was that he failed to pay the required deposit.

Finally, plaintiff asserts that defense counsel attempted to place plaintiff in a negative light by falsely claiming that plaintiff failed to timely appear for the deposition scheduled by defendant.[21] Plaintiff complains that the trial court did not sanction defense counsel despite plaintiff bringing the matter to the trial court's attention. Instead, plaintiff contends that he was sanctioned when the trial court granted defendant's motion for summary disposition.

As previously discussed, the parties dispute what occurred on the date scheduled for plaintiff's deposition and the court was not asked to resolve that dispute. Instead, the court addressed defendant's summary disposition motion to which plaintiff had responded. Plaintiff's missed deposition was neither mentioned in defendant's dispositive motion nor by the trial court during its hearing on the motion or in its opinion and order granting defendant's motion. The trial court did not "sanction" plaintiff or defense counsel; rather, the trial court ruled upon defendant's motion as presented after plaintiff had the opportunity to respond. Because plaintiff had notice and an opportunity to be heard, he had access to the court as well as due process. *Bonner v City of Brighton*, 495 Mich App 209, 221; 848 NW2d 380 (2014) (The guarantee of procedural due process requires notice and an opportunity to be heard before being deprived of life, liberty, or property.).

Affirmed.

/s/ Michael J. Kelly
/s/ Anica Letica
/s/ Randy J. Wallace

---

[20] For purposes of addressing this argument, we reviewed the pertinent appendices, even those not provided below. See footnote 6.

[21] See footnote 9.